IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SEKOU SHERIFF,

                    Plaintiff,

        v.

MICHAEL HALE, et al.,

                    Defendants.

CIVIL ACTION
NO. 14-4645

**OPINION**

**Slomsky, J.**                                                    **August 8, 2016**

### I.    INTRODUCTION

Plaintiff Sekou Sheriff, proceeding pro se and in forma pauperis, brings this civil rights action under 42 U.S.C. § 1983 against Officer Michael Hale ("Officer Hale") and the Colwyn Police Department.  Plaintiff alleges his constitutional rights were violated during events relating to his arrest on July 30, 2013.  Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 22), and Plaintiff's Response (Doc. No. 25).

The Complaint in this action was filed on August 8, 2014.  (Doc. No. 3.)  Although it is not entirely clear what the claims are, because Plaintiff is proceeding pro se, the Court construes his allegations liberally.[1]  As such, the Court interprets Plaintiff's Complaint to assert the following claims:  (1) a Fourth Amendment claim for false arrest and/or malicious prosecution; (2) a Fourth Amendment claim for illegal search of his vehicle; (3) a Fourth Amendment claim

---

[1]    Plaintiff has not set forth specific causes of action or alleged violations.  He alleges generally a "civil rights violation" and states facts to support this claim.  (Doc. No. 3.)

for use of excessive force;[2] and (4) a Fourteenth Amendment procedural due process claim for loss of his vehicle following his arrest.  For reasons that follow, the Court will grant Defendants' Motion for Summary Judgment (Doc. No. 22) as to all claims, except the Fourth Amendment claim for illegal search of the vehicle.

## II.        FACTUAL BACKGROUND

The factual background is taken from the Complaint (Doc. No. 3), Plaintiff's Deposition taken on July 28, 2015 (Doc. No. 22-2), victim Decontee Brown's ("Ms. Brown") Statement to Officer Hale (Doc. No. 22-3), Ms. Brown's Statement to Nurse (Doc. No. 22-3), Defendants' Motion for Summary Judgment and attached documents (Doc. No. 22), and Plaintiff's Response to the Motion and attached documents (Doc. No. 25).[3]

---

[2]    The Complaint does not state any facts to imply a cause of action for excessive force. However, as will be explained infra, the Court will address this claim based on the discovery in this case.

[3]    Facts contained in Defendants' Statement of Facts submitted with the Motion are deemed admitted to the extent Plaintiff has not responded or objected to them.  Pursuant to Federal Rule of Civil Procedure 56(e), if a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.

Additionally, this Judge's Scheduling and Motion Policies and Procedures, available at www.paed.uscourts.gov, and referred to in the Scheduling Order in this case (Doc. No. 19), state the following regarding Rule 56 Motions:

> Any motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 shall include a separate Statement of Undisputed Facts which sets forth, in numbered paragraphs, the material facts that the moving party contends are undisputed and entitle the movant to judgment as a matter of law. . . .

> The papers opposing a motion for summary judgment shall include a separate statement of material facts, responding to the numbered paragraphs set forth in the Statement of Undisputed Facts, which the respondent contends present genuine issues to be tried.  The responding party also shall set forth, in separate numbered paragraphs, any additional facts which the respondent contends preclude summary

On July 30, 2013, Plaintiff was arrested and charged with rape by forcible compulsion (18 Pa.C.S. § 3121), sexual assault (18 Pa.C.S. § 3124.1), indecent assault without the complainant's consent (18 Pa.C.S. § 3126(a)(1)), and unlawful restraint/serious bodily injury (18 Pa.C.S.§ 2902(a)(1)).  (Doc. No. 22-3, Ex. D4.)

### a.   The Arrest and Incarceration of Plaintiff[4]

Sometime before 9:00 a.m. on July 30, 2013, Officer Hale responded to a radio dispatch report of sexual assault on Ms. Brown.  (Id.; Doc. No. 22-1 ¶ 3; Doc. No. 22-2 at 33:5-20.) Officer Hale arrived at the scene, which was Ms. Brown's home located in Colwyn Borough, Pennsylvania.  Ms. Brown stated that she had been vaginally raped for close to three hours by her ex-boyfriend, Plaintiff Sekou Sheriff.  (Doc. No. 22-3, Ex. D4.)  Officer Hale observed that Ms. Brown was crying, she was wearing disarrayed clothing and a ripped shirt, her hair was in disorder, and she had a small scrape or abrasion on her right wrist and arm.  (Preliminary Hr'g Tr., Doc. No. 25 at 15-18.)  Ms. Brown stated that Plaintiff had fled the scene and gave Officer Hale a description of the Chevrolet Monte Carlo driven by Plaintiff, as well as his possible whereabouts at 67th Street and Greenway Avenue.  (Doc. No. 22-3, Ex. D4.)  Shortly thereafter,

---

judgment.  All material facts set forth in the statement required to be served by the moving party shall be admitted unless controverted by the opposing party.

Statements of material facts in support of or in opposition to a motion for summary judgment shall include specific and not general references to the parts of the record that support each of the statements.  Each stated fact shall cite the source relied upon, including the page and line of any document or deposition to which reference is made.

However, because Plaintiff is proceeding pro se, the Court reads Plaintiff's Facts in Response to Defendants' Motion for Summary Judgment liberally.

[4]   The facts are set forth in the light most favorable to Plaintiff.  As noted below, in deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)).

Darby Fire Company Medics arrived and transported Ms. Brown to Mercy Fitzgerald Hospital for evaluation and special victim treatment.  (Id.)

Sometime after 9:00 a.m., after Ms. Brown was transported to the hospital, Officer Hale proceeded to 67th Street and Greenway Avenue in Philadelphia.  (Id. ¶ 3; Doc. No. 3.)  At this location, Officer Hale observed Plaintiff operating the vehicle described by Ms. Brown, the 2003 Chevrolet Monte Carlo.  (Id. ¶¶ 4, 19.)  According to his deposition, Plaintiff had previous encounters with Officer Hale prior to this incident, and the two men were familiar with one another.  (Doc. No. 22-2 at 55:16-59:16.)  Plaintiff testified that he was at 67th and Greenway Avenue to meet a friend but forgot something at home and turned his car around to pick up the item.  (Id. at 43:1-7.)  When Plaintiff did so, he saw Officer Hale in his patrol car, with a gun pointed out of the window towards Plaintiff.  (Id. at 43:9-12; Doc. No. 25.)  Plaintiff testified that he slammed on the breaks in the middle of the street, and Officer Hale approached his car.  (Doc. No. 22-2 at 44:10-17.)  Plaintiff alleged that he was then dragged out of his car and slammed to the ground, and that Officer Hale "put his boots" onto Plaintiff's face while handcuffing him. (Doc. No. 22-2 at 44:14-25.)  He states that "[Officer Hale] slam me to the floor, had his boots on my hand, boots on my face . . . then he reach over and cuffed me."  (Id. at 47:22-48:8.) Plaintiff alleges that Officer Hale's boots were on his face for about 3-5 minutes;[5] he was then handcuffed and placed in a very hot patrol car.  (Doc. No. 25 at 2.)  While Plaintiff was in the patrol car, Officer Hale searched through Plaintiff's vehicle and trunk, and then parked Plaintiff's car a few feet away from the curb.  (Doc. No. 22-2 at 45:21-23.)  In his Response to the Motion for Summary Judgment, Plaintiff alleges that Officer Hale parked Plaintiff's vehicle first and

---

[5]   In Plaintiff's deposition, he states that Officer Hale's boots were on his face for about 5-10 minutes. (Doc. No. 22-2 at 48:14-24.).  In the same deposition, Plaintiff states that the entire encounter with Officer Hale lasted about 5 minutes.  (Id.)

then proceeded to illegally search it.  (Doc. No. 25.)  Plaintiff was then transported to the Colwyn Police Department.

After leaving the Colwyn Police Department, Officer Hale went to Mercy Fitzgerald Hospital to further investigate the incident, take a statement from Ms. Brown, and gather additional evidence.  (Doc. No. 22-3, Ex. D4.)  Officer Hale interviewed Ms. Brown at the hospital at approximately 11:20 a.m.  (Doc. No. 22-1 ¶ 7; Doc. No. 22-3, Ex. D3.)  She gave the following statement to Officer Hale:

> On 7/16/16 I Decontee Brown broke up with Sekou Shariff (sic).  On 7/26/13 Sekou Shariff (sic) returned to my apartment and asked for my computer and I refused to give it to him.  On 7/26/13 I told him to move out of my apartment.  On 7/28/13 Sekou came and took his clothes and left.  On 7/30/13 this morning Sekou returned to my apartment and entered without my permission and I told him to leave and take the rest of his things.  He refused and went into my room and went to sleep.  I went into the living room.  Went to sleep at 5:45 AM. I woke up at 6:45 AM and started getting dressed and went from the living room into the bedroom to finish getting dressed.  He was in my bed laying down then he snatched my weave cap and put it in his private area.  I got out another weave cap.  He took that and also put it in his private area.  He threatened to rape me and I told him no way.  I told him I would call the police on him.  He said no I don't care call the police.  I told him no and I refused to have sex with him.  He restrained my arms behind me then he penetrated my vagina with his penis.  He put his hands over my mouth and ripped my shirt.  He raped me from 6:45 AM to 9:20 AM.  He came inside me.  He has a key to apartment.

(Doc. No. 22-3, Ex. D3.)

At the hospital during the pre-examination sexual assault interview, Ms. Brown gave the following statement to a nurse:

> On 7/30/13 [at] 0300 assailant entered premises of victim.  Victim was asleep in bed.  When she heard assailant come in she told him to get his clothes & leave.  The assailant said no.  The victim gathered her blanket and went into living room to sleep where her friend was already sleeping on couch.  [At] 0545 the victim went into bedroom to get dressed.  She had to go to [] doctor's [appointment].  The assailant woke up.  Victim went into drawer to retrieve weave cap.  The assailant took weave cap from victim, and placed it under covers near his private area.  The victim retrieved another weave cap & assailant grabbed that one also and placed it with the first weave cap.  The victim removed a third weave cap &

assailant grabbed that one also.   Victim told assailant to please stop & leave. Assailant said you will have sex with me & victim said no. The assailant said "that is my p---y and if I want to f--k it I will."   The victim stated "I will call the police."   The assailant gave her his phone and stated "call them here is the phone. I am not afraid of police."   The victim then tried to leave but assailant grabbed her bent her [right] arm behind back, ripped clothes off of her & vaginally penetrated her.   Victim states rape started around 0645-0920 when assailant checked watch & stated he had to leave.   During assault assailant grabbed victim's mouth with hand & also squeezed [right] wrist. After assailant left victim called 911.

(Doc. No. 22-3, Ex. D2.)

Based upon the statements provided by Ms. Brown, Officer Hale prepared a Criminal Complaint and Affidavit of Probable Cause, which was approved by the Office of the District Attorney.   (Doc. No. 22-1 ¶ 1; Doc. No. 22-3, Ex. D4.)   As noted, the Criminal Complaint charged Plaintiff with rape by forcible compulsion, sexual assault, indecent assault without the complainant's consent, and unlawful restraint/serious bodily injury.   (Doc. No. 22-1 ¶ 2; Doc. No. 22-3, Ex. D4.)

Later in the afternoon on July 30, 2013, while Plaintiff was at the Colwyn Police Department, he overheard a conversation between Ms. Brown and Officer Hale.   Ms. Brown apparently had come to the police station to retrieve Plaintiff's car keys and cell phone.   (Doc. No. 25; Doc. No. 22-1 ¶¶ 32, 35.)   In response, Plaintiff told Officer Hale not to give Ms. Brown the car keys because the vehicle was registered in his name.   (Doc. No. 25; Doc. No. 22-1 ¶ 33.) Nevertheless, the belongings were released to Ms. Brown.[6]   (Doc. No. 25.)   Plaintiff did not observe Ms. Brown in the police station, but could hear her voice from his cell.   (Doc. No. 22-1 ¶ 36.)

At approximately 4:30 p.m. on July 30, 2013, Plaintiff was taken to be preliminary arraigned before a magisterial district judge.   Bail was set at $40,000, with a cash deposit

---

[6]   It is unclear from the record whether Plaintiff's vehicle had been left at the scene of Plaintiff's arrest, or if it had been driven or towed to the Colwyn Police Department.

requirement set at ten percent. (Doc. No. 22-2 at 52:5-19, 53:7-8; Doc. No. 22-3, Ex. D5.) At approximately 7:33 p.m., Plaintiff was transported to Delaware County Prison because he was unable to make bail. (Id. at 52:21-25; Doc. No. 22-1 ¶ 9; Doc. No. 22-3, Ex. D5.) At about 5:08 a.m. on July 31, 2013, Plaintiff was physically examined at the Prison. (Doc. No. 22-3, Ex. D6.) The report of the examination has no findings of any injuries. (Id.) The report does not reflect that during the examination Plaintiff complained of having received any injuries from his arrest. (Id.; Doc. No. 22-1 ¶ 10.)

On August 27, 2013, a preliminary hearing was held in the Court of Common Pleas of Delaware County. (Doc. No. 25, Ex. C1.) Plaintiff was represented by counsel. (Id.) Ms. Brown did not appear at the hearing, but Officer Hale gave testimony regarding the events on July 30, 2013. (Id.) Based upon the evidence presented by the prosecution, Plaintiff was bound over for trial. (Id.) He remained incarcerated until he was released in January 2014 on reduced bail. (Id. at 60:24-25, 61:1-6, 63:19-25.) On or about February 2014, Ms. Brown passed away. As a result, on or about March 2014, the criminal charges against Plaintiff were dismissed. (Id. at 64:3-18.)

### b.     **Events Involving the Chevrolet Monte Carlo**

While Plaintiff was imprisoned, the following events occurred with regard to his Chevrolet Monte Carlo. On November 7, 2013, Decontee Brown was operating the vehicle without a license. (Doc. No. 22-3, Ex. D7.) Ms. Brown was stopped, and the vehicle was towed and impounded. (Doc. No. 22-3, Ex. D7.) On November 8, 2013, a Philadelphia Parking Authority Impoundment Notice was sent to Plaintiff.[7] (Id.) The Impoundment Notice provided information regarding the violation, impoundment, and subsequent procedures. (Id.) On

---

[7]    The address on this notice and others have been redacted. It is unclear from the record where the notices were sent, and whether and when Plaintiff received them.

November 26, 2013, a Notice of Entry of Order was issued to Plaintiff, advising that the Monte Carlo would be sold at auction on December 12, 2013.  (Id.)  Following Plaintiff's release from prison, he received a Philadelphia Parking Violations Branch Notice of Outstanding Fees for towing and storage fees related to the auction of his vehicle.  (Doc. No. 25-2 at 10.)  Plaintiff also received two collection notices dated March 27, 2014 and April 10, 2014, stating that $6,306.19 was owed to Nationwide Affinity Insurance Company of America.  (Doc. No. 25-2 at 6-9.) Plaintiff testified during his deposition that he received a letter stating he was being sued for $6,700 related to an accident that occurred while Plaintiff was in prison and Ms. Brown was driving the vehicle.  (Doc. No. 22-1 ¶ 42.)  It is unclear from the record whether the collection notices are related to the alleged accident.

### c.        The Complaint

On August 6, 2014, Plaintiff initiated this action.  (Doc. No. 3.)  In the Complaint, Plaintiff seeks damages for pain and suffering, costs of the lawsuit and costs for his vehicle, totaling $20,000.  In the Complaint, however, Plaintiff confirms that he sustained no injuries from the events leading to his arrest.  (Id. at 5.)  The injury section of the Complaint states "[i]f you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required or received."  (Id.)  Plaintiff's response under this section was "[n]o."  (Id.)  But during his deposition, Plaintiff said he sustained a bruise on the left side of his head, scratches on the right side of his head, and headaches.[8]  (Doc. No. 22-2 at 82:19-83:11.) Plaintiff did not see a psychologist or psychiatrist as a result of the incident but received Tylenol while in prison.  (Doc. No. 22-2 at 84:6-18, 85:4-6.)  He admits that he sought no medical

---

[8]    Plaintiff's prison intake examination does not note any injuries as a result of the arrest and states that his head was "Atraumatic. Normocephalic." after the incident.  (Doc. No. 22-3 Ex. D6.)

treatment for the force used during his arrest and has no photographs of the alleged injuries. (Doc. No. 22-1 ¶ 49.)

### III.    STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.   Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."   Montgomery Cnty., Pa. v. MERSCORP Inc., 795 F.3d 372, 376 (3d Cir. 2015); see also Fed. R. Civ. P. 56(a).   A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.   Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   For a fact to be considered "material," it "must have the potential to alter the outcome of the case."   Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013).   Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."   Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."   Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)).   The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issue to be tried.   Anderson, 477 U.S. at 247-49.   Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.   Id. at

255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

The non-moving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings.  Id. at 248.  The non-movant must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial.  Id.  "[A] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements."  Super Fresh Food Mkts., Inc. v. United Food & Commercial Workers Local Union 1776, 249 F. Supp. 2d 546, 551 (E.D. Pa. 2003).  In ruling on a defendants' motion for summary judgment, a mere scintilla of evidence in support of the plaintiff's position is insufficient.  Anderson, 477 U.S. at 252.  Enough evidence must exist such that a jury could reasonably find for plaintiff.  Id.  The plaintiff cannot merely rely upon assertions or speculation.  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).  If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted.  Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009).

Where a non-moving party bears the burden of proof at trial, the moving party's burden may be "'discharged by 'showing'. . . that there is an absence of evidence to support the non-moving party's case.'"  Bouriez, 585 F.3d at 771 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  If the moving party carries this burden, "the burden shifts to the non-moving party to point to sufficient cognizable evidence to create material issues of fact such that a reasonable jury could find in its favor."  Bouriez, 585 F.3d at 771 (internal citation and quotation marks omitted).

IV.    ANALYSIS

Plaintiff's claims against Officer Hale and the Colwyn Police Department are based on an alleged violation of 42 U.S.C. § 1983.  Pursuant to § 1983, civil liability may be imposed upon any person who, acting under the color of state law, subjects another person to the deprivation of any right, privilege, or immunity secured by the Constitution and the laws of the United States of America.  42 U.S.C. § 1983.  Section 1983 does not create any new substantive rights, but rather creates a cause of action for violation of a federal right created elsewhere.  See Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2001).  Thus, "[t]he first step in evaluating a [S]ection 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).

As noted, viewing the Complaint in the light most favorable to Plaintiff, he alleges the following causes of action under 42 U.S.C. § 1983:  (1) a Fourth Amendment claim for false arrest and/or malicious prosecution; (2) a Fourth Amendment claim for illegal search of his vehicle; (3) a Fourth Amendment claim for use of excessive force; and (4) a Fourteenth Amendment procedural due process claim for loss of his vehicle following his arrest.  The Court will address each claim in turn.

A.  Claims Against the Colwyn Police Department

Initially, the claims against the Colwyn Police Department cannot stand because said Defendant is not an entity subject to suit under § 1983.  "The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a [S]ection 1983 action have unanimously reached the conclusion that it is not."  Johnson v. City of Erie, 834 F. Supp. 873, 879 (W.D. Pa. 1993) (citing PBA Local No. 38 v. Woodbridge Police

Dept., 832 F. Supp. 808, 826 (D.N.J. 1993)).  The Colwyn Police Department is a department of the Borough of Colwyn and, "as such, it is merely a vehicle through which the municipality fulfills its policing functions."  Id.  at 878-79.

In addition, although the Borough of Colwyn is not named as a Defendant in this case, Plaintiff has not established any claim against it pursuant to Monell v. Department of Social Services of City of New York, 438 U.S. 658 (1978).  In Monell, the court specifically concluded the following:

> . . . [C]ongress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.
> . . .
>
> . . . [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.

Id. at 691, 694.  Therefore, neither the Colwyn Police Department nor the Borough of Colwyn can be liable solely based on the conduct of Officer Hale.   Id.

Moreover, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. at 611.)  Plaintiff would need to establish that the Borough of Colwyn itself supported the alleged constitutional rights violation through the execution of a government policy or custom.   Id. Plaintiff has failed to produce evidence of any governmental policy or custom that supports a violation of a constitutional right.

A policy or custom has been defined as follows:

The Court set out to clarify the meaning of "policy" in <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986).  Recognizing that a single act of municipal policymakers can give rise to § 1983 liability, the Court held that decisions by officials with "final authority to establish municipal policy with respect to the action ordered" will be deemed policy.  <u>Id.</u> at 481, 106 S.Ct. at 1299. . . . Municipal custom, on the other hand, will arise where a course of conduct, though not formally approved through official channels, is so permanent and well settled as to virtually constitute law. <u>Monell</u>, 436 U.S. at 690–91, 98 S.Ct. at 2035–36 (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)); <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1481 (3d Cir. 1990).

<u>PBA Local No. 38</u>, 832 F. Supp. at 826.  Here, Plaintiff has failed to identify, let alone establish, the existence of any responsible policymaker or the pursuit of any unconstitutional policy or custom.

For all these reasons, summary judgment will be granted in favor of the Colwyn Police Department on all claims.

### B.  Fourth Amendment False Arrest and Malicious Prosecution Claim

Plaintiff alleges that he "was arrested by [Officer Hale] on a false claim."  (Doc. No. 3 at 3.)  The Court interprets this allegation as a claim of false arrest and/or malicious prosecution.  More specifically, Plaintiff alleges that he engaged in consensual sex with Ms. Brown, and that Ms. Brown falsified the rape charges.  (Doc. No. 22-2 at 30:18-31:14.)  Plaintiff contends that while having consensual sex with Ms. Brown, he received a cell phone call from a friend, whom Ms. Brown assumed was a woman.  (<u>Id.</u>)  Plaintiff speculates that Ms. Brown falsely accused him of raping her because she was jealous and/or mad at Plaintiff, and believed that Plaintiff had left her apartment to meet the woman that had just called.  (<u>Id.</u> at 82:10-12.)  Plaintiff denied the statements contained in Brown's Statement to Officer Hale.  (<u>Id.</u> at 76:15-82:12.)

#### (1)  False Arrest

A claim of false arrest is "predicated on an arrest made without probable cause in violation of the Fourth Amendment."  <u>Butler v. City of Phila.</u>, Civil Action No. 12-1955, 2014

WL 4652276, *2 (E.D. Pa. Sept. 17, 2014.)   "A warrantless arrest by a police officer is permissible under the Fourth Amendment when the arrest is supported by probable cause," and "an arrest supported by probable cause is not a constitutional violation and is not a basis for an action under § 1983."  Id. (citations omitted).   Thus, to prevail on a claim for false arrest, Plaintiff has the burden to show the absence of probable cause.  Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995); Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).

Probable cause exists for an arrest when: "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (quoting United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990)).  Importantly, "the proper inquiry in a [S]ection 1983 claim based on false arrest . . .  is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Id.  Additionally, the Third Circuit has stated:

> Although, generally, "the question of probable cause in a [S]ection 1983 damage suit is one for the jury," Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and may enter summary judgment accordingly.  Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).

Here, probable cause existed for Plaintiff's arrest.  Officer Hale responded to a 911 radio dispatch to Ms. Brown's home on a report of sexual assault.  There, Ms. Brown gave detailed statements to Officer Hale including that she had been forcibly raped by Plaintiff.  Officer Hale observed Ms. Brown crying with a ripped shirt and disorderly appearance.  Ms. Brown then was transported to the hospital for evaluation and special victim treatment.  Ms. Brown identified

Plaintiff's vehicle and a possible location where he could be found.  Officer Hale traveled to the location and encountered Plaintiff operating a vehicle matching Ms. Brown's description. Officer Hale was able to positively identify Plaintiff because the Officer had prior encounters with him.  (Doc. No. 25 at 15:8-12, 19:13-24.)

These facts clearly establish that Officer Hale had probable cause to conclude that Plaintiff committed the offense of rape.  A deputy district attorney and a magisterial district judge approved the Affidavit of Probable Cause and Criminal Complaint, and a Court of Common Pleas judge found that there was sufficient evidence presented at Plaintiff's preliminary hearing to sustain the charges against Plaintiff.  Plaintiff therefore was properly arrested for this offense.  Whether he in fact was guilty of raping Ms. Brown is not the relevant inquiry here.

Because probable cause existed for Plaintiff's arrest, any state or federal claims based on false arrest cannot stand.  Therefore, Defendants' Motion for Summary Judgment will be granted on this claim.

### (2)  Malicious Prosecution

Under Section 1983, Plaintiff asserts a claim for malicious prosecution in violation of the Fourth Amendment.  The elements of a cause of action for malicious prosecution are similar under both federal and state law.

Under federal law, a cause of action for malicious prosecution requires the satisfaction of five elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  Estate of Smith, 318 F.3d at 521.

Under state law, a cause of action for malicious prosecution requires the satisfaction of four elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000).

Critical to both federal and state malicious prosecution claims is the absence of probable cause element. A plaintiff has the burden to show an absence of probable cause for his arrest in order to prevail on a claim of malicious prosecution. Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007). Probable cause need not exist on every charge that is filed, but must for at least one. See Wright v. City of Phila., 409 F.3d 595, 604 (3d Cir. 2005).

Viewing the facts in the light most favorable to Plaintiff, he has failed to provide evidence showing that a reasonable jury could find that the criminal proceeding against Plaintiff was initiated without probable cause. As noted, probable cause existed to arrest and charge Plaintiff with rape. The facts set forth above show more than ample probable cause to arrest Plaintiff. Furthermore, a deputy district attorney and a magisterial district judge approved the Affidavit of Probable Cause and Criminal Complaint, and a Court of Common Pleas judge found that there was sufficient evidence presented at Plaintiff's preliminary hearing to sustain the charges against him.[9]  Moreover, Plaintiff has not presented any evidence that Defendants or

---

[9]   Plaintiff also notes in his Response to Defendant's Motion for Summary Judgment that his "due process rights [weren't] established in court [because he] was unable to face [his] accuser." (Doc. No. 25.) This argument has no merit. In Pennsylvania, it is not required that a victim testify in person at a preliminary hearing. The statements of the victim can be offered through the testimony of the officer who took the statement. Barber v. Page, 390 U.S. 719, 725 (1968); Commonwealth v. Ricker, 120 A.3d 349, 361-63 (Pa. Super. Ct. 2015) (holding that there is no federal constitutional right of confrontation at a preliminary hearing).

anyone else acted maliciously or for any purpose other than bringing Plaintiff to justice. Therefore, Defendants' Motion for Summary Judgment on this claim will be granted.

### C. Fourth Amendment Illegal Vehicle Search Claim

Plaintiff alleges that Officer Hale illegally searched his vehicle. The record is unclear on the sequence of events concerning the search of the car. Specifically, Plaintiff claims that after he was handcuffed, Officer Hale "went to [the] car, started ripping the seats, ripping everything. Open the trunk, go into everything. . . ." (Doc. No. 22-2 at 45:9-23.) Plaintiff alleges that Officer Hale then stopped the search of the vehicle and drove it a few feet away to the curb and parked it. (Id.) Similarly, the Complaint alleges that Plaintiff was placed in the squad car, Officer Hale then searched and parked the vehicle, and thereafter Plaintiff was taken to the police department. (Doc. No. 3 at 3.) To the contrary, in his Response to the Motion for Summary Judgment, Plaintiff alleges that Officer Hale parked Plaintiff's vehicle first and then proceeded to illegally search it. (Doc. No. 25 at 2.)

In the Motion for Summary Judgment, Defendants do not address this cause of action. They do not identify illegal search as a claim brought by Plaintiff, and do not seek summary judgment on this claim, although they do seek dismissal of the entire Complaint. Defendants do not present any facts related to a search. The Affidavit of Probable Cause for Plaintiff's arrest does not include any reference to Officer Hale having searched Plaintiff's vehicle. The record does not reflect that any evidence or contraband was recovered from Plaintiff's vehicle. No evidence appears in the record other than Plaintiff's assertion that a search occurred.

The Fourth Amendment protects against "unreasonable searches and seizures" of "persons, houses, papers, and effects." Warrantless searches are "*per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S.

347, 357 (1967)).  One such exception to the requirement that a warrant be secured prior to search of a vehicle is a search incident to a lawful arrest.  The constitutionality of a search incident to arrest is justified as much by the need to preserve evidence as it is for officer safety.  United States v. Robinson, 414 U.S. 218, 234-35 (1973).  A search incident to arrest is justified "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  Gant, 556 U.S. at 351.  "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."  Id.

Additionally, the Fourth Amendment does not require police to obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity.  United States v. Ross, 456 U.S. 798, 804-09 (1982); United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  Ross, 456 U.S. at 825.  See also Comm. v. Gary, 625 Pa. 183, 242 (2014) ("The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.")  "[S]earches for evidence relevant to offenses other than the offense of arrest" are permitted under Ross.  Gant, 556 U.S. at 347.

In this case, the only evidence before the Court is the deposition testimony of Plaintiff. He testified that Officer Hale searched his vehicle compartment, ripped open the seats, and searched the vehicle's trunk.  Although there is no evidence to corroborate this testimony, the Court must view these allegations in the light most favorable to Plaintiff and draw all reasonable

inferences in favor of Plaintiff.  Importantly, as noted, Defendants have not addressed in their Motion for Summary Judgment whether a search occurred, the extent of the search, and which, if any, exceptions may have applied.

An exception to a warrantless search may apply in this case to render the alleged search lawful; however, the Court is not presented with evidence to fairly lead to such conclusion.  First, because the Court has already held that there was probable cause to arrest Plaintiff, and that the arrest was lawful, Officer Hale was entitled to search the car to the extent that Plaintiff was within reaching distance of the passenger compartment at the time of the search or that Officer Hale had a reasonable belief that the vehicle contained evidence of the offense of arrest.  The first prong of this exception would not apply because Plaintiff testified that he was already handcuffed and in the back of the police car at the time of the search.  The second prong may have applied; however, without a statement from Officer Hale, the Court cannot make this assumption.  Additionally, there are no allegations that a weapon or other item was used during the rape.  Second, a search of the entire vehicle including the trunk may be lawful if Officer Hale had probable cause to believe the vehicle contained evidence of criminal activity.  However, again, the Affidavit of Probable Cause does not reference a vehicle search, and there is no other evidence in the record to support an assumption that Officer Hale conducted a search pursuant to this exception.  Other exceptions to the warrant requirement also may have applied.  Even if a valid exception applied, there is also a question as to whether the extent of the search – i.e., ripping the seats – was reasonable.

Therefore, although it is unclear from the record as to whether Officer Hale actually searched the vehicle and, if so, what the circumstances and/or reasons for the search were, Plaintiff has asserted facts upon which a jury could determine that an unlawful search occurred.

There remains a genuine issue of material fact precluding summary judgment on the claim that the vehicle was unlawfully searched in violation of the Fourth Amendment.  Thus, the Court must allow this claim to proceed.

### D.  Fourth Amendment Excessive Force Claim

No cause of action for excessive force can be implied from the Complaint.[10]  However, during discovery, Plaintiff made allegations that raise a claim for excessive force being used against him by Officer Hale.  In response to an interrogatory, Plaintiff stated that Officer Hale "step (sic) on my face with his boot when I was handcuff (sic) and lying on the ground.  After a while then he put me into his police car and roll (sic) up the window in a 89 plus degrees."  (Doc. No. 22-2 at 57.)  Plaintiff testified at his deposition that during his arrest Officer Hale "slammed [Plaintiff] on the ground with his boots on [Plaintiff's] face."  (Doc. No. 22-2 at 47:6-8.) Additionally, in Plaintiff's Response to the Motion for Summary Judgment, he states similar facts, albeit without any reference to the record.  The Court interprets all these allegations as a

---

[10]   The entirety of the facts alleged in the Complaint are as follows:

> I was arrested by Colwyn Police Officer Michael Hale on a false claim.  The officer pulled me over as I was driving my vehicle on 67th and greenway in Philadelphia PA at gunpoint.  I was taken from my vehicle and placed in his squad car.  The officer than (sic) began to illegally (sic) search my vehicle and than (sic) parked my vehicle.  I was than (sic) taken to Colwyn Police department and charged with rape, assult (sic) and a host of other chargers.  As I was in custody at the precint (sic), later in the evening the complaining witness came to the station demanding my keys and cellphone.  I informed the officer Michael Hale, that the vehicle was mine and he could find that information through my vehicle registration and title.  I told him not to give my belongings to the complaintant (sic) in which he disobeyed and gave them to her anyway.  She took my car and was driving it illegaling (sic) and got in an accident in which I am being sued for. My vehicle was also towed by Philadelphia Parking authority and sold while I was incarncerated (sic).

(Doc. No. 3 at 3-4.)

claim under Section 1983 for a violation of Plaintiff's Fourth Amendment rights by the use of excessive force.

> With regard to a claim for excessive force, the United States Supreme Court has stated:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

Graham v. Connor, 490 U.S. 386, 394 (1989) (citations omitted). In this case, the excessive force claim arose from the context of an arrest and therefore falls under the protection of the Fourth Amendment. Id. That being so, analysis must begin with the constitutional standard governing Fourth Amendment excessive force claims.

> The Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Id. The United States Supreme Court has also noted that:

> . . . *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard.

> . . .

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," [] violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 395-97 (citations omitted).  The Supreme Court, as well as the Third Circuit, has instructed that careful attention be given to the facts and circumstances of each case and that several factors should be considered in determining whether excessive force has been used.  Id. at 396.  The factors are: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  Id.; Estate of Smith, 318 F.3d at 515.

The Third Circuit also has noted other factors that are relevant in determining whether the force used by the officer was objectively reasonable.  These factors are: "(1) whether the physical force applied was of such an extent as to lead to injury; (2) the possibility that the persons subject to the police action are themselves violent or dangerous; (3) the duration of the action; (4) whether the action takes place in the context of effecting an arrest; (5) the possibility that the suspect may be armed; and (6) the number of persons with whom the police officers must contend at one time."  Estate of Smith, 430 F.3d at 150; Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997).

Initially, it should be noted that "[s]elf-serving deposition testimony is insufficient to raise a genuine issue of material fact."  Irving v. Chester Water Auth., 439 F. App'x 125, 127 (3d Cir. 2011).  Moreover, "[l]egal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."  Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).  Accordingly, the Court may disregard the statements that Plaintiff supports only with his own self-serving deposition testimony and in the Response to the Motion for Summary Judgment itself.  No other evidence, including but not limited to witness statements or documents, has been presented.

Moreover, the Court must address the various factors to determine whether the force used by Officer Hale was objectively reasonable.  Plaintiff was accused of forcible rape, which is a violent crime.  Officer Hale was aware that Plaintiff had fled the scene of the alleged crime and could have deemed this flight as an attempt to evade arrest.  Although Plaintiff was the only person being apprehended at the time, he had been accused of forcible rape and therefore could have been considered by a reasonable officer to be potentially violent or dangerous.  The duration of Officer Hale's actions was reasonable given the amount of time needed to effect an arrest and take Plaintiff into custody.  Officer Hale's actions occurred in the course of arresting the accused.

Significantly, there is no evidence that the force used by Officer Hale led to injuries.  The Complaint affirmatively states that Plaintiff sustained no injuries related to the events alleged. (Doc. No. 3 at 5.)  Additionally, no injuries are indicated in the prison's physical examination report which was completed less than 24 hours following his arrest. (Doc. No. 22-3.)  Plaintiff did not seek any further physical or psychological treatment related to his arrest, aside from receiving Tylenol in prison.  During his deposition, Plaintiff testified that he suffered bruises, scrapes, and headaches.  This evidence, however, is merely self-serving deposition testimony.  Plaintiff has not presented any other evidence to support his alleged injuries.  "The lack of any demonstrable injuries to plaintiffs further demonstrates that the physical force applied by defendants to effectuate their arrests was reasonable."  Williams v. Mattek, Civil Action No. 05-4788, 2007 WL 2363139, at *3 (D.N.J. Aug. 15, 2007).  Therefore, based on a consideration of the legal factors and circumstances of this case, Officer Hale's actions were objectively reasonable.

Plaintiff has failed to present evidence to support a claim for excessive force in violation of the Fourth Amendment.  Even when viewing the facts in the light most favorable to Plaintiff, he has not raised a triable issue of fact on this claim.  Summary judgment is therefore granted in favor of Defendants on any claim Plaintiff has asserted for use of excessive force.

### E.  Fourteenth Amendment Procedural Due Process Claim

Lastly, Plaintiff alleges that Officer Hale gave his vehicle and other belongings to Ms. Brown despite Plaintiff's objection.  (Doc. No. 3.)  Plaintiff states that he specifically asked Officer Hale not to give his property to Ms. Brown.  (Doc. No. 3 at 3; Doc. No. 25 at 2; Doc. No. 22-2 at 54:13-16.)  He claims that, as a result of Officer Hale's actions, Plaintiff's vehicle was later towed and auctioned by the Philadelphia Parking Authority, and he was sued in relation to an accident involving Ms. Brown while she was illegally driving the vehicle.  Defendants do not appear to dispute that the keys to Plaintiff's vehicle were given to Ms. Brown, or that Plaintiff did not consent to the release of the vehicle.  The Court interprets these allegations as alleging a Fourteenth Amendment procedural due process violation.

A claim for deprivation of procedural due process rights under § 1983 requires Plaintiff to allege that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

Plaintiff's car keys were given to Ms. Brown without his permission, and this fact may arise to a deprivation of property.  However, both elements of the cause of action must be satisfied in order for the claim to be viable.  Plaintiff must also show that the procedures available to him to remedy the deprivation did not provide due process of law.  Id.

The United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements . . . of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Although due process "usually required some type of pre-deprivation hearing, a post-deprivation hearing may also satisfy the requirement." McKenna v. Portman, 538 F. App'x 224-25 (3d Cir. 2013).

Under Pennsylvania Rules of Criminal Procedure 588(A), entitled Motion for Return of Property:

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Pa. R. Crim. P. 588. The Third Circuit has previously ruled that Rule 588(A) is an adequate procedural remedy that satisfies due process. See McKenna, 538 F. App'x at 224-25. Plaintiff does not allege in his Complaint that he availed himself of Rule 588 procedures and that they were inadequate.

Plaintiff had an opportunity to move under Rule 588(A) for the return of his vehicle after the release of his keys to Ms. Brown. However, Plaintiff failed to take advantage of such opportunity. Since an adequate post-deprivation remedy for Plaintiff's loss was available, his procedural due process claim with respect to property deprivation is unavailing. Plaintiff's failure to utilize Rule 588 procedure or claim that the procedures available to him were inadequate necessitates dismissal of this claim. See Willard v. Pa. Soc. for the Prevention of Cruelty to Animals, 525 Fed. App'x 217, 221 (3d Cir. 2013) ("Since plaintiff's complaint failed to allege she availed herself of Rule 588 or state tort law or that the available procedures were inadequate, the complaint does not state a claim for relief."). Additionally, any claims against

25

Defendants for occurrences subsequent to the release of his vehicle keys also are unavailing because these occurrences were caused by Ms. Brown, not Defendants. Consequently, Defendants' Motion for Summary Judgment on this cause of action will be granted.

## V.   CONCLUSION

For all the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 22) will be granted in part and denied in part. Summary judgment will be granted in favor of Defendants on the following claims: (1) the Fourth Amendment claim for false arrest and/or malicious prosecution; (2) the Fourth Amendment claim for use of excessive force; (3) the Fourteenth Amendment procedural due process claim for loss of his vehicle following his arrest; and (4) all claims against Defendant Colwyn Police Department. Summary judgment will be denied on Plaintiff's Fourth Amendment claim for illegal search of his vehicle by Officer Hale.

An appropriate Order follows.